IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SHAMEKA L. SMITH                                         PLAINTIFF

V.                                    CIVIL ACTION NO. 3:15-cv-106-WHB-JCG

COMMISSIONER OF SOCIAL                                   DEFENDANT
SECURITY


## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), the claimant Shameka L. Smith seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). The Commissioner found that Smith was not disabled, as defined by the Social Security Act, despite her severe impairments of obesity, major depressive disorder, anxiety and a seizure disorder. The Administrative Law Judge (ALJ) determined that Smith could return to her previous work or, alternatively, that other work she was capable of performing exists in the economy. The undersigned submits this Report and Recommendation to the District Judge and recommends that the Commissioner's Motion to Affirm (ECF No. 16) be granted.

I. Background

A. Procedural Background

Ms. Smith is a thirty-four year old female who is five feet, one inch tall and weighs 249 pounds. She left school before completing the tenth grade. She was diagnosed with major depression and anxiety in 2008 and a possible seizure

1

disorder in 2009. At the age of twenty-seven, Smith filed a Title II application for a period of disability and DIB on December 17, 2009 and, on December 21, 2009, a Title XVI application for SSI. Smith alleged an onset date of October 1, 2009 due to seizures, major depressive disorder, high blood pressure, and panic attacks. Smith's last date insured for purposes of her Title II application was December 31, 2015.

Smith's claims were initially denied on March 18, 2010, and upon reconsideration on June 8, 2010. Smith filed her request for a hearing before an ALJ on August 6, 2010. The ALJ heard Smith's case by video on January 24, 2012, wherein Smith appeared in Columbus, Mississippi and the ALJ sat in Tupelo, Mississippi. The ALJ heard testimony from a vocational expert (VE) and Smith, who waived her right to representation at that hearing. The ALJ issued a decision unfavorable to Smith on May 25, 2012.

B. The ALJ's Findings

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities ...." *Id.*

§ 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed in Appendix 1 of Subpart P to 20 C.F.R. pt. 404. *Id.* § 404.1520(d). Accordingly, if a claimant's impairment meets the requisite criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. *Id.* § 404.1525.

Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and/or mental demands of his past relevant work. *Id.* § 404.1520(e). If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner at step five to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work. *Id.* § 404.1520(f)(1). If the Commissioner proves other work that the claimant can perform exists (in significant numbers in the national economy), the claimant is given the chance to prove that he cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the instant case, the ALJ found at step one that Smith had not engaged in substantial gainful activity since October 1, 2009, the alleged onset date. Although the evidence showed that Smith had performed some work beyond this date and into 2010, the ALJ did not find that any of this work qualified as substantial gainful employment. At step two, the ALJ found that Smith had the severe impairments of major depressive disorder, anxiety, a possible seizure disorder, and in combination with her other impairments, obesity. The ALJ also found that Smith suffered from

several non-severe impairments including, but not limited to, shoulder pain, headaches, chest pain, lower extremity pain, hypertension, and iron deficient anemia. At step three, the ALJ determined that Smith did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404.

Next, the ALJ determined that Smith retained the residual functional capacity (RFC) to work at all exertional levels, with nonexertional limitations.

> She can often balance or climb ramps and stairs; frequently stoop, kneel, crouch, or crawl; and, never climb ladders, ropes, or scaffolds. She should avoid proximity to moving mechanical parts and work at high, exposed places. She is limited to performing simple, repetitive, non-detailed tasks for two-hour period[s] sufficient to complete a normal eight-hour day with normal breaks. She can have casual and superficial contact with coworkers and the general public. She must have direct and non-confrontational supervision. Changes in the workplace must be infrequent and gradually introduced.
> ….
> [Smith's] testimony demonstrates good control of her seizure disorder. Nevertheless, the [ALJ] has placed appropriate restrictions in the [RFC] to minimize the risk of danger posed by seizures. [Smith's] mental impairments are problematic. She has described symptoms of depression and anxiety. However, her record of treatment is intermittent[,] and she has shown poor compliance with treatment. The [ALJ] afforded the benefit of the doubt to [Smith] and assigned limitations appropriate for a person with depression and anxiety as described by [Smith]. There is no credible evidence to support a more limiting [RFC] than established herein.

(ECF No. 13, at 246-47, 49).

At step four, the ALJ concluded that Smith could return to her past relevant work as a manufacturing line worker. The VE testified that Smith had previously worked as a poultry line worker – an unskilled job performed at the light exertional level – and as a manufacturing line worker – an unskilled job performed at the light

exertional level. *Id.* at 290-91. The VE testified that Smith could not return to her past work as a poultry line worker but could return to her past work as a manufacturing line worker. *Id.* at 292.

The ALJ continued on to step five and found, in the alternative, that there are other jobs that exist in significant numbers in the national economy that Smith can perform. The VE testified that unskilled jobs existed in the economy that Smith could perform at the medium, light, and sedentary exertional levels. The medium exertional level representative occupations include dining room attendant, dishwasher, and janitorial worker. *Id.* at 293. The light exertional level representative occupations include photocopy machine operator, ticket taker, and dressing room attendant. *Id.* at 293-94. The sedentary exertional level representative occupations include a surveillance monitor, gate guard, or charge account clerk. *Id.* at 294.

Smith requested review of the ALJ's decision by the Appeals Council on April 22, 2013. *Id.* at 8. The Appeals Council granted Smith's request for review of the decision on October 28, 2014, but Smith did not submit any additional evidence for the Appeals Council to consider. *Id.* at 8. On December 17, 2014, the Appeals Council affirmed the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 10. Having exhausted her administrative remedies, Smith commenced the present action by Complaint filed February 18, 2015. (ECF No. 1).

C. Smith's Medical Treatment History

1. Seizures

Smith experienced her first seizure while working on October 9, 2009, the alleged onset date. (ECF No. 13, at 273). The medical records from Riley Hospital in Meridian, Mississippi, where Smith was treated, describe her first seizure:

> The patient was standing at her counter where she works in a chicken plant. She was cutting chickens and without warning she passed out. She fell on her right side very hard. She was sore over her right upper and lower extremities and she had a contusion to the right face. It looked like she really did pass out with the inability to protect herself. She said the people who observed this event said she was jerking all over with all four extremities and that she bit her tongue. She did have a bite mark on her tongue. She did not remember anything about this and she did not recall any warning leading up to this.

*Id.* at 599. A CT scan revealed no abnormalities. *Id.* at 602. But Dr. Joel Travis Callahan, Jr., advised Smith not to drive. *Id.* at 605. The rest of the medical records reveal no abnormalities that would explain her seizures. Smith testified that she had been hospitalized or went to the emergency room at least six or seven times related to seizures and saw a doctor, Dr. Morris, twice a month for her seizures. *Id.* at 270-72, 274. Smith further testified that she was prescribed Phenytoin for her seizures and that she experiences seizures monthly. *Id.* at 275-76. Smith also testified that she took high-blood pressure medication and "nerve pills," which Smith stated were Lorazepam. *Id.* at 275. Smith testified that she took her medication as prescribed, and the doctors continued to increase the dosage based on the results of regular blood work. *Id.* at 277.

2. Depression and Anxiety

Smith began receiving treatment for depression and anxiety in 2008. *Id.* at 481. At the hearing, Smith testified that she had crying spells that affected her ability to work. *Id.* at 278.

Q    And how often do you have crying spells?
A    I had one yesterday. I be so – you know, I be so depressed and – you know, my kids be needing stuff. And then, you know, I be going to get it for them, and I can't get it for them. And you know, that a hurt feeling. I can't – I can't [INAUDIBLE] my kids. [crying]
Q    There's some Kleenex there if you need it, Ms. Smith. Just take a moment to collect yourself. And when you're ready to answer, answer, but how often do you have the crying spells?
A    I have them all the time, because I be – I be –
Q    In the – oh, excuse me – in the course of a week, seven days, how often would you have crying spells?
A    Like, three or four days.
Q    And when you have a crying spell, how long does it last?
A    I call – I call and talk to my mom. And when I call and talk to her, you know, she know to make me feel better.
Q    And how long would each crying spell last? Would it last 10 minutes, 20 minutes, 30 minutes?
A    You know, about – probably about 15 to 20 minutes.

*Id.* at 278-79. Smith also testified that she suffered from panic attacks, twice a week, lasting about ten minutes at a time. *Id.* at 279-80. Smith was prescribed medication for her depression and anxiety, which she testified helped reduce the number of crying spells and panic attacks. *Id.* at 280. Smith testified that although she suffered a panic attack the week of the hearing, she had not had one the week before. *Id.* at 281.  She also testified that her doctors had advised her against "us[ing] knives and stuff like that." *Id.* at 281. Smith was prescribed Zoloft and Risperdal in June of 2008. *Id.* at 483. But the records from Community Counseling

Services show that Smith was inconsistent in taking her medication or seeking treatment.

3. Obesity

Neither Smith nor the Commissioner cite to any medical evidence of Smith's obesity in the record, but rather accept it as a *fait accompli*. In her decision, the ALJ finds that Smith is five feet, one inch tall and weighs 249 pounds. *Id.* at 245. Smith testified that she was five feet zero inches tall and weighed 230 pounds. *Id.* at 269. Smith further testified that this weight was unusual for her and that she had gained twenty to thirty pounds in the couple months leading up to the hearing. *Id.* at 269. Smith also testified that a doctor had told her she "probably need[ed] to lose weight." *Id.* at 284. Dr. James Bridges, in his description of Smith's physical condition, described her as obese, and Dr. Bridges' description gives the same height and weight as that used by the ALJ. *Id.* at 589. Regardless, the ALJ found Smith to be medically obese.

## II. Standard of Review

Review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales,* 402

U.S. at 401 (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen,* 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell,* 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994).

### III. Discussion

Smith alleges five assignments of error in her brief: (1) the ALJ erred in evaluating the credibility of Smith's testimony; (2) the ALJ erred in evaluating Smith's obesity; (3) the ALJ bolstered her opinion by using purely boilerplate language; (4) the ALJ erred in finding Smith could return to her past work; and (5) the ALJ erred by not according proper weight to evidence submitted by Smith's mother.

9

A. Credibility of Smith's Testimony

During the hearing, Smith testified to the limitations on her daily activities caused by her impairments. Smith testified that she could lift thirty pounds; that she could only stand for ten to fifteen minutes; that she could only walk for five minutes; that she could only sit for five minutes; that she could manage her own hygiene without help; that she had difficulty doing household chores, such as cleaning and cooking; and that she was able to take care of and play with her children. (ECF No. 13, at 281-86). But the ALJ found that Smith's testimony related to her daily activities not to be strong evidence of disability:

> First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reason, in view of the medical evidence and other factors discussed in this decision.

*Id.* at 248. Dr. Bridges' report states,

> [Smith] can dress and feed herself. She can stand at one time for thirty minutes for a total of two hours out of an eight-hour day. She can walk on level ground for a quarter of a mile and sit for ten minutes. She can lift ten pounds but denies being able to drive a car. She can complete household chores such as sweeping, mopping, washing the dishes and can climb stairs.

*Id.* at 589.

It is well established that an ALJ's credibility determinations are entitled to great deference. *Newton*, 209 F.3d at 459. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5. Further, "the

individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *Id.* at *7. Smith's testimony contradicted in part the medical evidence, and she did not explain her inconsistent treatment regimen. Therefore, the ALJ was entitled to discount the credibility of Smith's statements to some degree. The ALJ's credibility determination is supported by substantial evidence.

B. Consideration of Smith's Obesity

Smith argues that the ALJ did not give due consideration to her obesity and did not factor obesity into her questioning of the VE. "Obesity should be considered in combination with other impairments in making the residual functional capacity determination and in discussing the claimant's ability to perform sustained work activities." *Hobbs v. Astrue*, 627 F. Supp. 719, 726-27 (W.D. La. 2009) (citing *Beck v. Barnhart*, 205 F. App'x 207, 212 (5th Cir. 2006)); *see also* SSR 01-2p, 2002 WL 34686281, at *3 (identifying obesity's propensity to increase the risk of developing various other impairments and explaining that obesity will be considered throughout the sequential evaluation process).

The ALJ did treat Smith's obesity with some inconsistency by stating it was a severe impairment, but not listing it among Smith's severe impairments in other parts of her decision. However, this was not reversible error because the ALJ discussed Smith's obesity in detail. She found that Smith's "weight contributed to

11

her depression." (ECF No. 13, at 245). But she also found that it did not "cause[] any signs or symptoms which would meet the requirements of any listed impairment." *Id.* at 245. The ALJ accorded significant weight to the opinion of state agency consultant Dr. Glenn James, who found that Smith had no exertional limitations. *Id.* at 248. And the ALJ accorded some weight to the opinion of Dr. Bridges, who also found that Smith suffered from no exertional limitations. *Id.* at 248. Because the effects of Smith's depression and anxiety, though compounded by her obesity, were considered and accounted for in the ALJ's RFC analysis, Smith's argument is without merit.

C. Use of Boilerplate Language

Smith next argues that the ALJ improperly used "two paragraphs [that] have been lifted out of hundreds of decisions over the years. These [paragraphs] are not unique nor pertinent to this case and are often used as a [sic] 'fillers' for an unfavorable decision." (ECF No. 15, at 14). The Commissioner counters that "[t]he ALJ's decision includes language shared by many other ALJ decisions because it relies upon common legal standards." (ECF No. 17, at 7).

Federal courts do not look kindly on decisions "[w]here an ALJ merely uses boilerplate or template language to state summary conclusions based on cherry-picked evidence that supports only his decision" because it deprives the court of the ability to make a meaningful review of the decision. *Gonzalez v. Colvin*, No. 4:14-cv-104, 2015 WL 1509497, at *5-6 (N.D. Miss. Mar. 31, 2015) (citing *Burnett v.*

*Comm'r*, 220 F.3d 112, 119-20 (3d. Cir. 2000); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).

But when the offending boilerplate language is removed, as the court did in *Gonzalez*, the ALJ's analysis is not rendered threadbare. *See id.* The ALJ's decision is still supported by the medical record, Smith's testimony, and the testimony of the VE. ALJs should refrain from using boilerplate language to shore up their decisions, but mere semantic convenience will not render a decision meaningless. *See Estate of Gill v. Pike Cty., Miss.*, No. 5:15-cv-54, 2015 WL 5607806, at *2 (S.D. Miss. Sept. 23, 2015) (holding rule that collective allegations are insufficient did not operate "to prohibit linguistic convenience"). Every case deserves a thorough and individual analysis, but not every case will require the writing of a unique conclusion. Accordingly, the Court finds this argument is without merit.

D. Ability to Return to Past Relevant Work

Smith argues that the ALJ did not comply with SSR 82-62 in finding that she could return to her past relevant work. (ECF No. 15, at 16). The Commissioner disagrees:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>> 1. A finding of fact as to the individual's RFC.
>> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4. First, the ALJ made a thorough determination of Smith's RFC. *See* (ECF No. 13, at 246-49). Second, the ALJ determined that Smith's

past relevant work as a line worker, manufacturing was "an unskilled job performed at the light exertional level." *Id.* at 249. The ALJ relied on the VE's testimony in making this determination. *See id.* at 249-50. Third, the ALJ determined that "[t]he demands of [Smith's] past relevant work do not exceed her [RFC]." *See id.* at 250. The ALJ's decision for each required factual finding is supported by substantial evidence.

E. Evidence of Smith's Mother

Smith argues that the ALJ accorded insufficient weight to a third party function report completed in February 2010 by Smith's mother, Deloise Smith.

> [Deloise] stated that [Smith] was inactive through a typical day due to depression. She indicated that the claimant neglected personal hygiene and her appearance. She said that the claimant needed reminders to perform daily activities. She report that she prepared the claimant's meals, but indicated that the claimant was able to prepare simple meals. She stated that the claimant's depression caused her to neglect household chores and avoid socialization. However, she said that the claimant attended church regularly. She stated that the claimant could not drive due to possible seizures. She estimated that the claimant could pay attention [for] no more than five to ten minutes, and that she did not handle stress well.

*Id.* at 248 (citing *id.* at 424-31). The ALJ accorded the report "limited weight," finding that "[t]he objective evidence, including the claimant's work history, shows a greater level of ability than described by" Deloise. *Id.* at 248.

In making a disability determination, an ALJ may consider evidence from other sources, such as "[s]pouses, parents and other caregivers, sibling, other relatives, friends, neighbors, clergy, and employers." SSR 06-03p, 2006 WL 2329939, at *2. However,

> [i]nformation from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Id.* The ruling also states that the ALJ

> generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at *6.

In this case, the ALJ explained what weight she gave Deloise's function report and why she discounted it (it was inconsistent with other credible evidence). Further, Smith cites to a Ninth Circuit case holding that the "wholesale dismissal of the testimony of all the [family] witnesses as a group" because they were "understandably advocates, and biased" did "not qualify as a reason germane to each individual who testified." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). But "[i]n the Fifth Circuit, it is within an ALJ's discretion to reject lay person testimony in the absence of supporting objective findings 'because the observations of an individual, particularly a lay person, may be colored by sympathy for the affected relative or friend and influenced by that person's exaggeration of his limitation.'" *Detraz v. Comm'r of Soc. Sec.*, No. 2:07-cv-177-DAS, 2009 WL 1324960, at *6 (N.D. Miss. May 12, 2009) (quoting *Harrell v. Bowen*, 862 F.2d 471, 482 (5th

Cir. 1998)). The ALJ found that Deloise's statements were contradicted by other objective evidence. The ALJ's decision is supported by substantial evidence.

## IV. Recommendation

Having considered the briefs filed by Smith and the Commissioner, the record, and the relevant legal authority, the undersigned United States Magistrate Judge recommends that the Commissioner's Motion to Affirm (ECF No. 16) be granted.

## V. Notice of Right to Object

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 29th day of July, 2016.

_s/ John C. Gargiulo_
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE